# The Supreme Court of South Carolina

Danny B. Crane, Petitioner,

v.

Raber's Discount Tire Rack, Employer, and South
Carolina Uninsured Employers Fund, Carrier,
Respondents.

Appellate Case No. 2018-000959

————————————

ORDER

————————————

The petition for rehearing is denied.  The attached opinion is substituted for the
previous opinion, which is withdrawn.

s/ Donald W. Beatty    C.J.

s/ John W. Kittredge    J.

s/ Kaye G. Hearn    J.

s/ John Cannon Few    J.

s/ George C. James, Jr.    J.

Columbia, South Carolina
April 29, 2020

# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Danny B. Crane, Petitioner,

v.

Raber's Discount Tire Rack, Employer, and South Carolina Uninsured Employers' Fund, Respondents.

Appellate Case No. 2018-000959

---

## ON WRIT OF CERTIORARI TO THE COURT OF APPEALS

---

Appeal from the Workers' Compensation Commission

---

Opinion No. 27951
Heard October 16, 2019 – Filed March 11, 2020

Re-Filed April 29, 2020

---

### REVERSED AND REMANDED

---

Stephen Benjamin Samuels, Samuels Law Firm, LLC, of Columbia, for Petitioner.

Matthew Joseph Story, Daniel Paul Ranaldo, and Lisa C. Glover, Clawson & Staubes, LLC, of Charleston, for Respondent South Carolina Uninsured Employers' Fund.

---

**JUSTICE FEW:** Danny Crane sought workers' compensation benefits for hearing loss and brain injuries he alleged he suffered in a work-related accident. The workers' compensation commission denied most of Crane's claims, finding he was not entitled to benefits for temporary total disability, permanent impairment, or future medical care. The primary basis for denying these three claims was the commissioner who initially heard the case found Crane was not credible. The court of appeals reversed the commission's denial of temporary total disability benefits, but otherwise affirmed. We now reverse the commission's denial of permanent impairment and future medical care benefits. We remand to the commission for a new hearing on all three claims.

Our courts have frequently held that when the commission makes a credibility determination based on substantial evidence, the credibility finding itself is substantial evidence, and factual findings properly based on the credibility finding are binding on the courts. *See, e.g.*, *Lee v. Bondex, Inc.*, 406 S.C. 97, 101, 749 S.E.2d 155, 157 (Ct. App. 2013) (holding the commission's finding that "four doctors' opinions were 'more persuasive on the issue of causation' than other medical evidence" was a "credibility determination" that "if supported by substantial evidence, is binding on the court," and affirming the commission's factual finding of compensability based on that credibility determination (citing S.C. Code Ann. § 1-23-380(5) (Supp. 2019))). The commission may not, however, give artificial importance to a credibility determination when credibility is not a reasonable and meaningful basis on which to decide a question of fact. In this case, Crane's lack of credibility was not a reasonable and meaningful basis on which to ignore objective medical evidence. Therefore, the commissioner and the appellate panel improperly based the factual determination to deny Crane's claims on the commissioner's credibility finding.

## I.    Facts and Medical History

On February 19, 2014, Danny Crane was working as a mechanic at Raber's Discount Tire Rack in Barnwell, South Carolina. Crane heard a hissing noise coming from an air-powered tire changer. He and a coworker were investigating the cause of the noise when an air hose attached to the tire changer suddenly separated from its fitting, causing an explosion-like sound. Surveillance video shows Crane stepped away from the tire changer and covered his ears with his hands. Crane testified that immediately after the incident, his ears were ringing, he was in pain, and he could not hear. He texted his wife and asked her to pick him up to take him to the emergency room.

Crane's wife drove him to Barnwell County Hospital, where Crane complained of difficulty hearing in both ears and assessed his ear pain as an 8 out of 10. The emergency room doctor diagnosed Crane with conductive hearing loss and referred him to an ear, nose, and throat specialist.

The next morning, Crane saw Dr. John Ansley, an otolaryngologist at Carolina Ear Nose and Throat Clinic in Orangeburg. In his physical examination, Dr. Ansley observed both of Crane's eardrums had "perforations." Dr. Ansley conducted a hearing test, and the resulting audiogram[1] showed Crane had severe sensorineural hearing loss in both ears. Dr. Ansley wrote in his report, "Hopefully his thresholds will improve." At a follow-up appointment on March 6, however, Dr. Ansley conducted another hearing test that indicated Crane "actually had a shift downward" in his hearing. The March 6 test showed "profound hearing acuity loss in both ears." Because Crane's hearing loss had not improved, Dr. Ansley referred Crane to the Medical University of South Carolina for an auditory brainstem response test. However, Crane's medical insurance did not cover the test, the Uninsured Employers' Fund denied the entire claim and thus refused to pay for it,[2] and the commission did not require it. To this date, Crane has not received the test.

On May 19, 2014, Dr. David Rogers—a medical expert Crane retained—examined him. Dr. Rogers found both of Crane's eardrums were ruptured. He described a 60% tear in the right eardrum and an 80% tear in the left. Dr. Rogers diagnosed Crane with permanent and profound bilateral sensorineural hearing loss and concluded his hearing could not be restored by natural means.

Crane saw other doctors after his accident for problems such as dizziness, headaches, a fall resulting in a broken rib, and continuing pain from the broken rib. On February 25, 2014, Crane had a CT scan that showed normal results. After the initial hearing but before the commissioner issued a written order, the commissioner permitted

---

[1] An audiogram is, "The graphic record drawn from the results of hearing tests with an audiometer, which charts the threshold of hearing at various frequencies against sound intensity in decibels." *Audiogram*, STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006).

[2] Raber's was not insured, and for that reason the Uninsured Employers' Fund is responsible for Crane's claim. *See* S.C. Code Ann. § 42-1-415(A) (2015) ("The Uninsured Employers' Fund shall assume responsibility for claims within thirty days of a determination of responsibility made by the commission.").

Crane to supplement the record with the results of a third hearing test, conducted August 19, 2014, at Carolina Ear Nose and Throat. The audiogram from that test showed Crane suffers from "profound hearing loss" in the right ear and "profound to severe hearing loss" in the left ear. The otolaryngologist who saw him that day noted Crane "reads lips," and wrote, "He should be considered disabled because of this."

## II.     Proceedings at the Commission

Crane filed a Form 50 alleging "head injury and hearing loss" from being hit in the head by an object and from the explosion-like sound. In his pre-hearing brief, Crane alleged he "suffered head/brain injuries, severe hearing loss, and psychological overlay." As to the alleged brain injury, Crane argued he was not at maximum medical improvement, and thus "a determination of physical brain damage is premature and not before the Commission at this hearing." The employer and the Uninsured Employers' Fund each filed a separate Form 51 denying all claims.

Commissioner Susan Barden promptly held the initial hearing on June 26, 2014. The medical evidence described above was included in the record, and Crane was the only witness. In her April 30, 2015 order, the commissioner focused almost exclusively on Crane's credibility. She wrote, "Claimant's conduct/presentation at the hearing (including prior to opening the record) was more revealing than the substance of his actual testimony." She added, "Claimant's 'display' and evasiveness at the hearing . . . make me seriously question whether or not there was an actual injury" and "if Claimant had legitimate, causally-related hearing loss he would have felt no need to 'perform' at the hearing." She stated Crane's ability to hear or not hear questions was "selective" and "had no modicum of consistency." She again referred to Crane's testimony as an "inconsistent performance," and stated his acting was "very poor." She mentioned "other problematic issues," which she did not name. However, referring to the surveillance video of the incident as though this evidence obligated her to find some injury, the commissioner found Crane did "sustain[] an injury to his ears."

Based primarily on the finding Crane's testimony was not credible, the commissioner denied Crane's claims for temporary total disability, permanent impairment, and future medical care. The appellate panel affirmed. The court of appeals affirmed the appellate panel as to permanent impairment and future medical care, but reversed as to temporary total disability. *Crane v. Raber's Discount Tire Rack*, Op. No. 2018-UP-085 (S.C. Ct. App. filed Feb. 14, 2018). We granted Crane's petition for a writ of certiorari.

### III. Analysis

Our review of the decisions of the workers' compensation commission is governed by the Administrative Procedures Act. *Hutson v. S.C. State Ports Auth.*, 399 S.C. 381, 387, 732 S.E.2d 500, 502 (2012); *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 134, 276 S.E.2d 304, 306 (1981). The Act provides, "The court may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact." S.C. Code Ann. § 1-23-380(5) (Supp. 2019). As to questions of fact, "The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the . . . findings . . . are . . . (e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." *Id.* When the commission makes a finding of fact that is properly supported by substantial evidence, the courts must uphold it. *Pierre v. Seaside Farms, Inc.*, 386 S.C. 534, 540, 689 S.E.2d 615, 618 (2010).

The commission often makes findings of fact based on credibility determinations. In numerous cases, our courts have upheld factual findings the commission made based on its credibility determination. *See, e.g.*, *Langdale v. Carpets*, 395 S.C. 194, 203, 717 S.E.2d 80, 84-85 (Ct. App. 2011) (upholding the determination that insurance coverage exists based on the commissioner's decision to believe one witness over another, "which we defer to on appeal"); *Fishburne v. ATI Sys. Int'l*, 384 S.C. 76, 90, 681 S.E.2d 595, 602 (Ct. App. 2009) (upholding the commission's findings regarding the extent of injury because the commission determined the claimant "was not credible"); *McGriff v. Worsley Cos., Inc.*, 376 S.C. 103, 113-14, 654 S.E.2d 856, 861-62 (Ct. App. 2007) (upholding the finding that an injury was compensable based in part on the commission's credibility determination).

The reason we consistently affirm these findings derives from a principle that applies beyond credibility to all factual determinations of the commission: "an award must be founded on evidence of sufficient substance to afford a reasonable basis for it." *Hutson*, 399 S.C. at 387, 732 S.E.2d at 503 (quoting *Wynn v. Peoples Nat. Gas Co. of S.C.*, 238 S.C. 1, 12, 118 S.E.2d 812, 818 (1961)). When the commission's factual determination is "founded on evidence of sufficient substance," and the evidence "afford[s] a reasonable basis" for the commission's decision in the case, the evidence meets the "substantial evidence" standard and we are bound by the decision. This point is illustrated in the hundreds of cases in which our appellate courts have affirmed factual determinations by the commission.

The counterpoint is illustrated by *Hutson*, in which we reversed a factual determination by the commission. In *Hutson*, the claimant sustained an injury that prevented him from "continuing in his life's occupation as a crane operator." 399 S.C. at 387, 732 S.E.2d at 503. He sought to prove disability through wage loss under section 42-9-20 of the South Carolina Code (2015). 399 S.C. at 385, 732 S.E.2d at 502. Thus, we stated, "The sole question before us . . . [was] whether his injury will also prevent him from earning the same wages in another job." 399 S.C. at 387-88, 732 S.E.2d at 503.

The commission found the claimant failed to prove he suffered a wage loss that qualified him for disability under section 42-9-20. 399 S.C. at 385, 732 S.E.2d at 502. The evidentiary basis for this factual determination was the claimant's testimony he believed he could make money running a restaurant. 399 S.C. at 385, 388, 732 S.E.2d at 501-02, 503. The commissioner who conducted the initial hearing "concluded that because Hutson could not testify as to how much he would make as a restaurateur, there was no way to determine if he would suffer any loss of earning capacity." 399 S.C. at 385, 732 S.E.2d at 502. The commissioner specifically stated that but for this testimony by the claimant, he would have found the claimant disabled. *Id.* The court of appeals in *Hutson* affirmed, ruling substantial evidence supported the commission's factual finding that the claimant failed to prove his wage-loss claim. *Hutson v. State Ports Auth.*, 390 S.C. 108, 114, 700 S.E.2d 462, 466 (Ct. App. 2010).

This Court reversed. 399 S.C. at 390, 732 S.E.2d at 504. The Court explained two reasons the claimant's testimony did not qualify as "substantial evidence" under the Administrative Procedures Act. First, we stated "despite [the claimant]'s confidence in his own abilities, the record is clear that [he] had no experience running a restaurant or an understanding of what doing so entails." 399 S.C. at 388, 732 S.E.2d at 503. We found it "is abundantly clear from [the claimant]'s testimony . . . that he never worked in a restaurant in his life, much less operated one, and he clearly had no idea what income he might realize from such a venture." 399 S.C. at 390, 732 S.E.2d at 504. We criticized the commission's "use [of the claimant's] unsupported and wildly optimistic goals" as evidence to support the denial of his wage loss claim. 399 S.C. at 388, 732 S.E.2d at 503.

Second, we considered the context of the testimony. We explained the testimony was not offered to prove he could make the same money running a restaurant that he made operating a crane, which was "approximately $90,000 per year." 399 S.C. at 385, 732 S.E.2d at 501. Rather, "the sole purpose for [the claimant's] testimony was to support [his] request that his award be paid to him in a lump sum." 399 S.C. at

388, 732 S.E.2d at 503. The claimant "desire[d] to continue to have a productive work life," and he made a "commendable" request that the commission give him the best chance to do so by awarding benefits in a lump sum. 399 S.C. at 390, 732 S.E.2d at 504. "In sum," we held, "the full commission's conclusion is based on rank speculation and cannot now be used as the basis for denying [the] claim for lost wages." 399 S.C. at 389-90, 732 S.E.2d at 504. Under *Hutson*, when the commission's factual finding is not "founded on evidence of sufficient substance to afford a reasonable basis" for the finding, we will not uphold it.

In cases in which we affirmed factual findings of the commission based on its credibility determination, we did so because it made sense for the commission to use credibility as the dispositive factor in deciding the particular issue. In *Langdale*, for example, the resolution of the insurance coverage question before the commission depended on whether the manager of an employment management agency's client told the agency that a particular employee was to be covered for workers' compensation. 395 S.C. at 202, 717 S.E.2d at 84. The evidence on the point was disputed, 395 S.C. at 203, 717 S.E.2d at 84-85, but the commission's determination to believe the manager's testimony logically resolved the factual dispute. Thus, the commission's credibility determination was a reasonable and meaningful basis for its decision.

*Lee v. Bondex, Inc.*—referenced above—also illustrates the important role credibility findings play when credibility reasonably and meaningfully relates to factual disputes to be decided by the commission. In *Lee*, the claimant was installing a large metal hood at his employer's plant when the hood fell on him. 406 S.C. at 99, 749 S.E.2d at 156. The claimant testified a sharp edge landed on his shoulder, resulting in immediate pain and difficulty working. 406 S.C. at 99-100, 749 S.E.2d at 156. The compensability of his injuries depended on "whether they were caused by the hood falling on his shoulder." 406 S.C. at 100, 749 S.E.2d at 156. The commissioner denied the claim, finding he did not prove he suffered a compensable injury. *Id.*

The appellate panel found the injury was compensable and reversed. *Id.* "[T]he appellate panel specifically relied on four doctors who examined [the claimant], each of whom gave the opinion that the accident caused his injuries. The appellate panel specifically found the four doctors' opinions were 'more persuasive on the issue of causation' than other medical evidence indicating the injury was not work-related." 406 S.C. at 101, 749 S.E.2d at 156-57. The court of appeals affirmed because the appellate panel's reliance on the credibility of the four doctors made sense. The commission's credibility determination was a reasonable and meaningful basis on

which to decide the dispositive factual question of whether the injury was work-related, and thus compensable. The court held, "This credibility determination by the appellate panel," which the court found was supported by substantial evidence, "is binding on the court." 406 S.C. at 101, 749 S.E.2d at 157.

In cases where credibility is not a substantial issue, however, even a valid credibility finding is not a proper basis for deciding a question of fact. This case illustrates that point. Even if Crane was untruthful in his testimony at the hearing, his claims for future medical care, temporary total disability, and permanent impairment caused by hearing loss are based on objective medical evidence. The opinions of his treating physicians that he suffers from severe to profound hearing loss as a result of his work-related accident are similarly based on objective medical evidence. There is little in Crane's medical records—or anywhere in the record before us—that indicates Crane's credibility reasonably and meaningfully relates to whether he actually suffered hearing loss on February 19, 2014.

To make a proper review of a factual determination by the commission based on credibility, the appellate court must not only understand that the commission relied on the credibility finding; the court must also be able to understand the reasons the evidence supports the credibility finding, and must be able to understand the reasons credibility supports the commission's decision. In most cases, this is obvious from context. In *Langdale*, for example, it required no explanation from the commission for the reviewing court to understand that the credibility determination—the manager did tell the agency a particular employee was to be covered—resolved the disputed factual question of insurance coverage.

In other cases—like this one—more explanation is required. In cases like this, the commission may not simply recite its finding that a witness is not credible, but must explain the basis for its credibility finding.[3] Then, the commission must explain how

_____

[3] To some extent, Commissioner Barden did explain the basis for her credibility finding. Her explanation, however, reads as though she decided to find Crane not believable and then searched for reasons to justify her preconception. For example, the commissioner found Crane's testimony he cannot work because it is too loud to be inconsistent with his testimony he has to turn up the radio in the car to hear it. It is true he testified to those things, but the commissioner's conclusion he lacked credibility does not flow from the testimony. Crane testified he has almost been run over at work several times because he cannot hear cars and other vehicles. To hear these vehicles and avoid being run over, he must turn up his hearing aids so loud that the background noise gives him headaches. He also testified he must set the car

the credibility determination is important to making the particular factual finding. *See generally Pack v. State Dep't of Transp.*, 381 S.C. 526, 535, 673 S.E.2d 461, 466 (Ct. App. 2009) (reversing the commission because of "its failure to explain exactly why it denied Pack's claim"). Here, neither Commissioner Barden nor the appellate panel gave any explanation how Crane's lack of credibility can justify ignoring the medical evidence, or how his credibility even relates to whether he suffered hearing loss. Four physicians diagnosed Crane with severe to profound hearing loss. Those diagnoses appear to have been based on at least two objective observations by the physicians. First, Crane's eardrums were ruptured, with one doctor describing a 60% tear in the right eardrum and an 80% tear in the left. Second, Crane had at least three hearing tests that showed severe to profound hearing loss in both ears.

We can discern no basis—either from context or from the commission's orders—on which the commission could find Crane lied to make his eardrums appear ruptured. Similarly, neither the context of the commission's decision nor any explanation in the commission's orders give us any meaningful basis on which to understand that Crane's lack of credibility justifies ignoring the results of three different hearing tests—conducted by two different ear, nose, and throat specialists—each of which showed severe to profound hearing loss. As we required in *Hutson*, the commission's factual determinations "must be founded on evidence of sufficient substance to afford a reasonable basis for it." 399 S.C. at 387, 732 S.E.2d at 503.

## IV. Conclusion

Credibility can be important in resolving factual disputes before the commission. When credibility is a reasonable and meaningful basis on which to make a factual determination, and when there is evidence of sufficient substance to afford a reasonable basis for the credibility finding, we will uphold the commission's factual determinations on the basis of credibility. However, that was not the case here. The commission erred in denying Crane's claims for hearing loss based on credibility without explaining any basis on which credibility could justify ignoring objective medical evidence. We remand to a different commissioner for a new hearing. The commissioner must reconsider the date of maximum medical improvement and make de novo findings on Crane's claims for temporary total disability, permanent

---

radio volume very high or he cannot hear it. Those statements are clearly not inconsistent with each other. They are consistent with his claim of hearing loss. The commissioner relied on several other alleged inconsistencies that do not seem all that significant when taken in context. Nevertheless, there is some evidence to support the commissioner's finding Crane lacked credibility.

impairment, and future medical care based on his alleged hearing loss and psychological overlay.

**BEATTY, C.J., KITTREDGE, HEARN and JAMES, JJ., concur.**